**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD SMALL, | : | |
| in his own right and as Administrator | : | No. 1:22-cv-01146 |
| of the Estate of Wally Small a/k/a Wallace | : | |
| Clarence Small, Deceased, | : | (Judge Kane) |
|     Plaintiff | : | |
| | : | |
|     v. | : | |
| | : | |
| LOWER PAXTON TOWNSHIP and | : | |
| OFFICER MICHAEL ELEZOVIC, | : | |
|     Defendants | : | |

**MEMORANDUM**

Before the Court is a motion to dismiss the Second Amended Complaint filed by Plaintiff

Richard Small ("Plaintiff"), in his own right and as Administrator of the Estate of Wally Small

a/k/a Wallace Clarence Small, Deceased ("Decedent"), filed by Defendants Lower Paxton

Township (the "Township") and Officer Michael Elezovic ("Officer Elezovic" and, with the

Township, "Defendants").   (Doc. No. 30.)   For the reasons that follow, the Court will grant the

motion to dismiss.

## I.     BACKGROUND

Despite its fairly recent filing, this case has an involved procedural history, which the

Court sets forth below after detailing the facts asserted in Plaintiff's Second Amended

Complaint.

### A.     Factual Background[1]

Plaintiff avers that on July 23, 2020, at approximately 8:00 p.m., Decedent was "lawfully

operating a vehicle" on the 1000 block of Avila Road in Lower Paxton Township, Pennsylvania.

---

[1]   The factual background is drawn from Plaintiff's Second Amended Complaint, the allegations
of which the Court accepts as true for purposes of the pending motion to dismiss.   See Lum v.

(Doc. No. 21 ¶ 6.)   At that same time and place, Officer Elezovic, acting under color of law and within the scope of his employment, "allegedly observed [Decedent's] vehicle 'not utilizing his turn signal 100 feet prior to commencing a turn, and stopping for 4-6 seconds at a stop sign', and based on these alleged observations, decided to commence a high speed chase."   (Id. ¶ 7.) Plaintiff alleges that Decedent "was understandably fearful when a white police officer would try to stop him without cause just a few weeks after the tragic murder of George Floyd at the hands of a white police officers in Minneapolis, MN, and therefore fled."   (Id. ¶ 8.)   Officer Elezovic called in the chase to dispatch and "was informed by his supervisor Corporal Pachalski to terminate the chase immediately, since his justification for probable cause was insufficient, in violation of custom and practice, and likely in violation of internal policies that Lower Paxton Township has thus far concealed and yet to disclose."   (Id. ¶ 9.)   Plaintiff alleges that "[d]espite this[,] Officer Elezovic continued the high speed chase, for approximately one and one half miles reaching speeds in excess of 80 miles per hour, through residential areas and a school zone, leaving the jurisdiction of Lower Paxton Township, and continuing the chase into Susquehanna Township, where, predictably, the chase terminated in a four (4) vehicle motor vehicle accident at the intersection of Union Deposit Road and South Progress Avenue, Susquehanna Township."   (Id. ¶ 10.)   "As a result of this occurrence, Decedent was caused to sustain severe injuries, including internal injuries, blunt impact trauma to his torso and other injuries, which ultimately led to the declaration of his death at Hershey Medical Center at approximately 8:42 p.m. on July 23, 2020."   (Id. ¶ 11.)

_____

Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004).

B.    Procedural Background

On July 25, 2022, the Township filed a Notice of Removal (Doc. No. 1) removing this case, which was originally filed by Plaintiff on July 1, 2022, in the Dauphin County Court of Common Pleas, to this Court and attaching the state court complaint (id.).   Plaintiff's state court complaint asserted negligence allegations against the Township but also included the base assertion that the Township "also violated the Constitutional Civil Rights of Plaintiff's decedent."   (Id.)   Accordingly, in reliance on that assertion, the Township removed the case to this Court, asserting federal question jurisdiction.   (Id. at 1–2.)

On August 1, 2022, the Township filed a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).   (Doc. No. 3.)   On August 15, 2022, the Township filed a brief in support of its motion to dismiss in accordance with Local Rule of Court 7.5. (Doc. No. 5.)   Plaintiff subsequently filed a letter request for an extension of time—until October 1, 2022—to respond to the motion to dismiss (Doc. No. 6), which request the Court granted (Doc. No. 7).   On September 27, 2022, Plaintiff filed a motion to compel discovery (Doc. No. 8), prompting the Court to schedule a status conference with the parties (Doc. No. 9). At that conference, Defendants' counsel volunteered to provide the requested discovery to Plaintiff's counsel, and Plaintiff's counsel requested an additional extension of time to respond to the pending motion to dismiss; accordingly, upon the conclusion of that conference, the Court issued an Order granting Plaintiff an extension of time until October 17, 2022, to respond to the Township's motion to dismiss and denying Plaintiff's motion to compel as moot.   (Doc. No. 11.)   Thereafter, on October 13, 2022, Plaintiff filed a concurred-in motion for an extension of time to respond to the Township's motion to dismiss (Doc. No. 12), which the Court granted (Doc. No. 13), making Plaintiff's response due November 1, 2022.

On November 1, 2022, Plaintiff filed a Reply to Defendant's Motion to Dismiss and Cross Motion for Leave to File an Amended Complaint (Doc. No. 14), along with a brief in support (Doc. No. 14-2).   In his motion, Plaintiff represented that "[o]n October 24, 2022, [the Township] finally provided answers to discovery and produced documents which provide the factual background for the initiation and continuation of this high-speed chase, which ultimately led to Plaintiff's decedent's untimely death" and, on that basis, "request[ed] leave of Court to file an Amended Complaint pursuant to FRCP 15(a)(2)."   (Doc. No. 14 ¶¶ 7–8.)   Plaintiff stated that he requested defense counsel's consent to his cross-motion but received no response.   (Id. ¶ 8.)   The Township did not file a brief in opposition to Plaintiff's Cross Motion for Leave to File an Amended Complaint within fourteen (14) days of the filing of Plaintiff's brief in support of his motion.   Accordingly, the Court deemed the motion unopposed in accordance with Local Rule of Court 7.6 and granted Plaintiff's Cross Motion by Order dated November 28, 2022, providing Plaintiff twenty (20) days within which to file an amended complaint.   (Doc. No. 15.)   That Order also denied the Township's motion to dismiss the complaint.   (Id.)

Subsequently, on December 15, 2022, Plaintiff filed an amended complaint.   (Doc. No. 16.)   In addition to the claims asserted in the original complaint, the amended complaint explicitly asserted a 42 U.S.C. § 1983 ("Section 1983") municipal liability claim against the Township and added Officer Elezovic as a defendant, asserting Section 1983 and negligence claims against him.   (Id.)   On December 29, 2022, the date any response to Plaintiff's amended complaint was due, the Township filed two motions: (1) a Joint Motion for Leave to Amend (Doc. No. 18); and (2) a Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 19).   In the Joint Motion for Leave to Amend the Township represented as follows:

> 4. Counsel for Defendant Lower Paxton Township and Plaintiff Richard Small
> have discussed Defendant's request that Plaintiff agree to amend his Complaint to

4

allege facts consistent with the undisputed facts of record, notably that an order to discontinue the pursuit was not provided until <u>after</u> the car crash at issue had occurred.

5. The date of this motion, December 29, 2022, is also the deadline for which a response to Plaintiff's Amended Complaint was to be filed.   Counsel for Defendant apologizes for the short notice provided to the Court regarding the subject of this motion.

6. Counsel for both Plaintiff and Defendant have discussed this motion and submit it as a joint motion for enlargement to this Honorable Court to allow the pleadings to best represent the facts of record.

7. Defendant concurs to an amendment as proposed but in the event that the amendment is not made, Defendant respectfully requests an enlargement of time to respond to Plaintiff's Amended Complaint as currently filed.

WHEREFORE, the parties request that this Honorable Court provide leave for Plaintiff to file a Second Amended Complaint, or in the alternative enlarge the deadline to respond to Plaintiff's Amended Complaint.

(Doc. No. 18 at 3.)

Faced with these twin filings, the Court construed the first motion as representing the parties' joint desire that Plaintiff be permitted the opportunity to file a second amended complaint, and given the first motion's filing on the same day that the Township's response to the operative amended complaint was due to be filed, the Court viewed the Township's filing of a motion to dismiss the amended complaint as protective of its rights in the event the Court declined to grant the parties' Joint Motion for Leave to Amend.   Accordingly, on January 4, 2023, the Court granted the parties' Joint Motion for Leave to Amend, providing Plaintiff with a third opportunity to file a complaint in this matter and denied the Township's motion to dismiss. (Doc. No. 20.)

Plaintiff filed a Second Amended Complaint (Doc. No. 21) on January 23, 2023, again asserting negligence (Count III) and Section 1983 municipal liability (Count II) claims against the Township and Section 1983 (Count I) and negligence (Count III) claims against Officer

5

Elezovic.[2]   On the same day, the Court received a letter from Plaintiff's counsel detailing a

dispute between Plaintiff and the Township.   (Doc. No. 23.)   Specifically, the letter represented

that the Township objected to three requests for production of documents seeking the following

information:

> 18.    Lower Paxton Township Police Department complete policy and
> procedure manual for the operation of police vehicles including policies,
> procedures and directives for operation in a high speed chase or emergency
> situation.
>
> 19.    Lower Paxton Township Police Department directives for police pursuit,
> and pursuit outside Lower Paxton Township jurisdiction.
>
> . . . .
>
> 24.    A complete copy of the personnel file on Officer[] Michael Elezovic, as
> well as all investigative documents pertaining to any and all other high speed
> chases initiated or participated in by him, which culminated in a motor vehicle
> accident.

(Doc. No. 23-1 at 6–7.)   Plaintiff's letter represented that "[t]hese documents are crucial

discovery to investigate the nature and extent of the municipality's liability on this claim."

(Doc. No. 23 at 1.)

The Court directed the Township to respond to Plaintiff's letter (Doc. No. 22), and

accordingly, on January 30, 2023, it filed a letter response (Doc. No. 26).   In that letter, the

Township's counsel represented as follows:

> As the Court is aware, Defendants requested that this Honorable Court dismiss the

---

[2]   The Second Amended Complaint seeks a remedy pursuant to Pennsylvania's wrongful death
statute, 42 Pa. C.S.A. § 8301 (Count IV), and survival statute, id. § 8302 (Count V).   (Doc. No.
21 at 7–9.)   Pursuant to Pennsylvania law, "wrongful death and survival actions are not
substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover
for unlawful conduct that results in death."   See Sullivan v. Warminster Twp., 765 F. Supp. 2d
687, 707 (E.D. Pa. 2011).   Accordingly, Plaintiff's Second Amended Complaint asserts
essentially three claims: (1) a Section 1983 claim against Officer Elezovic (Count I); (2) a
Section 1983 municipal liability claim against the Township (Count II); and (3) a negligence
claim against both defendants (Count III).

<u>Monell</u> claim as asserted in the first and second iterations of Plaintiff's Complaint. We are now presented with Plaintiff's third attempt to assert such a claim in [his] Second Amended Complaint and in Defendants' view, the claim is still deficient, and Defendants anticipate filing a motion to dismiss the claim against the Township. Against this background, Defendants have objected to providing the Lower Paxton Township police policies and procedures on the basis that Plaintiff[] ha[s] consistently failed to state a claim that could make such procedures relevant. Defendants assert that its policies and procedures are proprietary and privileged absent a claim that warrants their production. Accordingly, Defendants submit there is a compelling reason to stay the discovery sought until such time as the Court determines that Plaintiff has asserted a viable claim.

. . . .

As the Court is aware, Defendants have endeavored to supply Plaintiff[] with all relevant information based upon the <u>facts</u> alleged in the Complaints. To that end, Defendants have supplied Plaintiff[] with, <u>inter alia</u>, the mobile video recording ("MVR") footage from Officer Elezovic's vehicle. This discovery is particularly relevant to Plaintiff's current claim that he requires the Township's policies and procedures to plead a claim against the Township. The MVR footage and accompanying audio unequivocally demonstrates that the accident occurred less than two minutes after the pursuit was commenced and, contrary to the allegations in the Second Amended Complaint, moments <u>before</u> the order to discontinue was issued.

(Doc. No. 26 at 1–2.) Defendants' counsel requested that the Court "assess the viability of Plaintiff's third effort to implicate the Township before ordering the production of the applicable policies and procedures." (<u>Id.</u> at 3.)

On February 6, 2023, Defendants filed the pending motion to dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 30.) Also on February 6, 2023, Plaintiff's counsel filed a reply to the January 30, 2023 letter submitted by Defendants' counsel. (Doc. No. 29.) Plaintiff's counsel's letter did not respond to Defendants' argument that Plaintiff's Second Amended Complaint pleads facts that contradict the MVR footage produced by the Township to Plaintiff; instead, it argued that "in order to successfully prosecute a municipal claim for liability

under Monell, it is imperative that the municipality produce written and unwritten policies and procedures relevant to the facts of the case, as well as the personnel file for the Officer involved."   (Id.)   Further, Plaintiff's counsel stated that, "[c]onsistent with its prior practice, the Defendant is once again attempting to conceal discovery in order to support another Motion to Dismiss," and "requested that the Court not sanction such impropriety and enter an Order striking the aforementioned Objections to production, and compel Defendant to produce the necessary documentation for Plaintiff's review."   (Id.)   Plaintiff also requested that "the Court afford the Plaintiff . . . an opportunity to file a Third Amended Complaint with greater specificity, once this discovery has been produced."   (Id.)

After careful consideration of Plaintiff's request, the Court declined to order the Township to produce the documents requested by Plaintiff and instead ordered a stay of discovery in this matter pending the Court's resolution of Defendants' Rule 12(b)(6) motion to dismiss.   (Doc. No. 31.)   In so doing, the Court noted that the purpose of Rule 12(b)(6) is to "streamline [] litigation by dispensing with needless discovery and factfinding," see Neitzke v. Williams, 490 U.S. 319, 326–27 (1989), and that Plaintiff must file a complaint that states a plausible claim before he is entitled to discovery, see Mann v. Brenner, 375 F. App'x 232, 239 (3d Cir. 2010) (unpublished) (finding no abuse of discretion in district court's conclusion that plaintiff was not entitled to discovery prior to a Rule 12(b)(6) ruling because "[a] motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and therefore may be decided on its face without extensive factual development").   (Doc. No. 31 at 8.)   The Court also noted that Plaintiff already had the opportunity to file three versions of a complaint in this case, two of them after receiving some discovery from the Township, and that the pending motion to dismiss argues that all the claims asserted in Plaintiff's complaint are subject to

dismissal for failure to state a claim upon which relief can be granted.   (Id.)   Under such circumstances, the Court concluded that Plaintiff's outstanding discovery requests were not "proportional to the needs of the case."   See Fed. R. Civ. P. 26(b)(1); (Doc. No. 31 at 8).

Five days after the Court issued its February 16, 2023 Order, Defendants filed a brief in support of their motion to dismiss.   (Doc. No. 32.)   Plaintiff filed a response to Defendants' motion to dismiss (Doc. No. 35) and a brief in support of the response (Doc. No. 36) on March 7, 2023.   Defendants thereafter filed a reply brief.   (Doc. No. 37.)   Having been fully briefed, Defendants' motion to dismiss is ripe for disposition.

## II.   LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.   See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).   The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.   See Fed. R. Civ. P. 8(a).   Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."   See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.   See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010).   The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).   Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of

pleading."   See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).   To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.   See id.   The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.   As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"   See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."   See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."   See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.   DISCUSSION

Defendants seek dismissal of all claims asserted in the Second Amended Complaint on the following grounds: (1) the claims asserted against Officer Elezovic are barred by the relevant statute of limitations; (2) Plaintiff's Section 1983 municipal liability claim against the Township

"relies upon conclusory allegations regarding the nature of the policies at issue and offers no facts that are supported by the record to 'show' a causal connection between the objectionable policies and Plaintiff's alleged injuries"; and (3) Plaintiff's negligence claims against the Township are barred by the Pennsylvania Political Subdivision Tort Claims Act.   (Doc. No. 30 at 5–7.)   The Court first addresses Plaintiff's federal claims.

### A.      Federal Claims

Section 1983 is the vehicle by which private citizens can seek redress for violations of federal constitutional rights committed by state officials.   See 42 U.S.C. § 1983.   The statute provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id.   Section 1983 "does not . . . create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws."   See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).   To state a claim for relief under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States" and "show that the alleged deprivation was committed by a person acting under color of state law."   See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

### 1.      Section 1983 Claim Against Officer Elezovic

As noted, supra, Defendants maintain that Plaintiff's claims against Officer Elezovic, asserted for the first time in Plaintiff's December 15, 2022 amended complaint—not in his July 1, 2022 original complaint—are barred by the applicable two-year statute of limitations.

A "complaint is subject to dismissal for failure to state a claim on statute of limitations grounds [] when the statute of limitations defense is apparent on the face of the complaint."   See Wisniewski v. Fisher, 857 F.3d 152, 157 (3d Cir. 2017).   Statutes of limitations "run[] from the moment that a claim accrues," see Nguyen v. Pennsylvania, 906 F.3d 271, 273 (3d Cir. 2018), which occurs the moment the "plaintiff has 'a complete and present cause of action'" and "can file suit and obtain relief," see Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997) (quoting Rawlings v. Ray, 312 U.S. 96, 98 (1941)), and "knew or should have known of the injury upon which its action is based," see Sameric Corp. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998).

A two-year statute of limitations is applicable to Plaintiff's Section 1983 and state law negligence claims.   See Sameric, 142 F.3d at 599 (applying Pennsylvania's two-year statute of limitations for personal injury claims to Section 1983 claims); 42 Pa. C.S.A. § 5524 (stating that two-year statute of limitation applies to any "action or proceeding to recover damages for injury to a person or property which is founded on negligent, intentional, or otherwise tortious conduct").   Here, Plaintiff's claims accrued on July 23, 2020, the date of the vehicle pursuit that resulted in Decedent's death.   See Sameric, 142 F.3d at 599.   Plaintiff timely filed his initial complaint asserting claims against the Township on July 1, 2022, in the Dauphin County Court of Common Pleas, but did not file an amended complaint asserting claims against Officer Elezovic until December 15, 2022, well past the expiration of the two-year statute of limitations.  Therefore, as Plaintiff and Defendants acknowledge (Doc. Nos. 36 at 7–8; 33 at 8), Plaintiff's claims against Officer Elezovic are time-barred unless they relate back to Plaintiff's initial complaint.

In order for an amended pleading to relate back to an original pleading if "the amendment

changes the party or the naming of the party against whom a claim is asserted," three

requirements of Federal Rule of Civil Procedure 15(c)(1)(C) must be met.   Rule 15(c) provides:

> **(c) Relation Back of Amendments.**
>   **(1)** *When an Amendment Relates Back.*   An amendment to a pleading relates back to the date of the original pleading when:
>     **(A)** the law that provides the applicable statute of limitations allows relation back;
>     **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading; or
>     **(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>       **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and
>       **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

See Fed. R. Civ. P. 15(c).

Defendants argue that Plaintiff has not satisfied the requirements of Rule 15(c)(1)(C)

with regard to his amended complaint asserting claims against Officer Elezovic, first arguing that

the claims against Officer Elezovic did not, under Rule 15(c)(1)(B), arise "out of the conduct,

transaction, or occurrence set out—or attempted to be set out—in the original pleading" (Doc.

No. 33 at 9–10), and then arguing that Plaintiff cannot show that "but for a mistake concerning

the proper party's identity," Officer Elezovic knew or should have known that claims would

have been asserted against him in the original complaint, maintaining that Plaintiff made a

"tactical" decision (id. at 10) to sue only the Township.   In this regard, Defendants assert that

Plaintiff's original complaint "clearly identifies Officer Elezovic as the individual involved in the

police pursuit" (id. at 12), and yet "with full knowledge of the parties involved, Plaintiff elected

to assert a claim against [the] Township exclusively" (id. at 10).

In response, Plaintiff argues that the actions of the Township caused his delay in naming

Officer Elezovic as a defendant in this action, maintaining that Officer Elezovic received notice as required by Rule 15.   Specifically, he argues that the actions of the Township prevented him from identifying Officer Elezovic as a defendant prior to the filing of the amended complaint on December 15, 2022, because "[t]he only investigative document produced by the Defendant pre-litigation is the heavily redacted incident report attached hereto as Exhibit 'A,'" and a review of the report indicates that "it is completely unclear as to [Officer Elezovic's] role as it relates to this high speed chase."   (Doc. No. 36 at 7.)   Plaintiff maintains that "a fair reading of the heavily redacted incident report is that Officer Michael Elezovic was the responding officer to the accident itself, and may not have been the officer who initiated this illegal chase" and so was "not specifically named as a party in Plaintiff's [o]riginal [c]omplaint."   (Id. at 7–8.)   Plaintiff then states that:

> Between the time of the filing of the [o]riginal [c]omplaint, and Plaintiff's [a]mended [c]omplaint, Defendant was instructed by the Court to produce meaningful discovery that had been long withheld.   Upon receipt of this discovery, it became clear, for the first time, what Officer Michael Elezovic's true role was here.   It is respectfully submitted that Defendant purposely concealed this information prior to that time, and only produced candid responses after being told to do so by the Court after the statute of limitations had expired.

(Id. at 8.)   Plaintiff also argues that:

> It is clear that the real party in interest here is Lower Paxton Township, and that both [it] and Officer Elezovic were fully aware of Police Officer Michael Elezovic's involvement here since the happening of this accident.   They actively concealed the true role of Officer Elezovic until after the statute of limitations, in an obvious effort to invoke prejudice upon the Plaintiff's ability to properly plead a cause of action against this Officer.   The reference to Officer Elezovic in the [o]riginal [c]omplaint, albeit not as a party at that time, put both Lower Paxton Township and Officer Elezovic on notice of his involvement in this cause of action, and, but for a mistake manufactured by the Defendant's concealment of the true facts, Officer Elezovic would have been named as a party in the [o]riginal [c]omplaint.

(Id. at 9.)

14

As an initial matter, the Court is compelled to correct Plaintiff's procedural history of this case.   As a review of the docket in this matter reveals, the Township produced the discovery Plaintiff requested in the motion to compel discovery without being ordered by the Court to do so.   Thus, following the status conference, the Court denied Plaintiff's motion to compel as moot and granted Plaintiff's counsel's request for an extension of time to respond to the Township's motion to dismiss the original complaint.   (Doc. No. 11.)[3]  Plaintiff's statement that "[b]etween the time of the filing of the [o]riginal complaint, and Plaintiff's [a]mended [c]omplaint, Defendant was instructed by the Court to produce meaningful discovery" is simply incorrect, as is Plaintiff's statement that discovery was produced by Lower Paxton Township "after being told to do so by the Court."   (Doc. No. 36 at 8.)   No such order was issued by the Court.

That said, in assessing whether Plaintiff has shown that all three requirements of Rule 15(c)(1)(C) are met here, the Court finds that Plaintiff's Section 1983 and negligence claims against Officer Elezovic arise out of the same "conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading."   Defendants' argument to the contrary is unavailing.   The Court acknowledges that, in the amended complaint (Doc. No. 16) and Second Amended Complaint (Doc. No. 21), Plaintiff ultimately attempts to articulate a Monell municipal liability claim as well as a negligent hiring claim against the Township based on the police pursuit of  Decedent; however, in Plaintiff's original complaint, the allegations against the Township consisted of negligence in connection with the operation of a police vehicle, which is the same "conduct, transaction or occurrence" upon which Plaintiff's later-filed claims against Officer Elezovic are based.   In so concluding, the Court notes the somewhat unusual way in

---

[3]  Plaintiff later filed a motion seeking an additional extension of time to respond to the motion

which Plaintiff's original complaint sets forth the facts in this matter in its initial paragraphs:

3. At all times material herein, Officer Michael Elezovic was operating a police vehicle owned by Defendant, Township as its agent, in furtherance of the scope of his agency, or with the express permission of Defendant, Township.

4. On or about July 23, 2020, at or about 8:00 p.m., Defendant, Township, acting as [sic] aforesaid, so carelessly and negligently operated its vehicle with unjust cause, and commenced a high speed chase of the vehicle operated by decedent, which, to Plaintiff's knowledge had broken no laws, from an unknown place in Lower Paxton Township, through the Township boundaries and across jurisdictional lines into Susquehanna Township, where a foreseeable crash occurred at or near the intersection of State Highway 3015 (South Progress Road) and State Highway 3020 (Union Deposit Road), with three (3) other vehicles, resulting in substantial personal injuries, property damage, and ultimately, the death of Plaintiff's decedent.

5. The negligence and carelessness of the Defendant, acting as [sic] aforesaid, consisted of the following:

> a. engaging in a high-speed chase without probable cause, and in violation of the policies of Lower Paxton Township Police Department and common practice;
> b. engaging in a high speed chase in an unsafe urban area, where it was highly foreseeable that a crash would occur;
> c. engaging in a high speed chase in a busy urban area outside the jurisdictional limits of Lower Paxton Township;
> d. operating its vehicle at an excessive rate of speed;
> e. failing to have proper and adequate control of its vehicle so as to avoid accidents;
> f. disregarding traffic signals and controls;
> g. failing to keep a proper lookout;
> h. failing to give proper and adequate warning of the approach of its vehicle;
> i. violating the pertinent provisions and ordinance of the County of Dauphin and Pennsylvania Motor Vehicle code, as well as the policies [sic] for initiating and continuing high speed chases.

6. Defendants, acting as aforesaid, also violated the Constitutional Civil Rights of Plaintiff's decedent, by engaging in an unlawful high speed chase into another [sic] jurisdiction conduct an unlawful search and seizure of the decedent, the vehicle he was operating, and its contents at the scene of the aforesaid crash, caused their actions.

---

to dismiss (Doc. No. 12), which the Court also granted (Doc. No. 13).

(Doc. No. 1 at 8–9, ¶¶ 3–6.)   Based on the above recitation of facts (in which, after initially mentioning Officer Elezovic's operation of a police vehicle, Plaintiff's allegations read as if the Township is driving the vehicle, and no negligent hiring or municipal liability claim is explicitly pleaded), the Court is hard-pressed to conclude that the claims later asserted against Officer Elezovic—which include Section 1983 and negligence claims based on his role as driver of the police vehicle involved in the pursuit—do not arise out of the same "conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading."   See Fed. R. Civ. P. 15(c)(1)(B).

However, even if this Court assumes arguendo that Plaintiff has shown that Officer Elezovic had notice of the action within the 120-day timeframe referenced by Rule 15 and so would not be prejudiced in defending this case (an issue Plaintiff fails to address in his briefing beyond stating that "[t]he reference to Officer Elezovic in the [o]riginal [c]omplaint . . . put both Lower Paxton Township and Officer Elezovic on notice of his involvement"), the Court concludes that Plaintiff has failed to demonstrate the third requirement of relation back under Rule 15(c)(1)(C)—that Officer Elezovic "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity."   See Fed. R. Civ. P. 15(c)(1)(C).   While Plaintiff argues that this "mistake" was "manufactured by the Defendant's concealment of the true facts" (Doc. No. 36 at 9), Plaintiff's naming of Officer Elezovic in his original complaint indicates that Plaintiff was aware that Officer Elezovic had a role of significance in the events underlying this case (and can even be fairly construed as reflecting that Officer Elezovic was the driver of the vehicle involved in the police pursuit). Under such circumstances, Plaintiff cannot demonstrate that he made a "mistake concerning the proper party's identity."   See Garvin v. City of Philadelphia, 354 F.3d 215, 221–22 (3d Cir.

2003) (stating that "an amended complaint will not relate back if the plaintiff had been aware of the identity of the newly named party when she filed her original complaint and simply chose not to sue them at that time").   Whether Plaintiff's failure to name Officer Elezovic as a defendant in the original complaint was a "tactical" choice, as the Township describes it, or one of omission, Plaintiff's Section 1983 claim against Officer Elezovic, asserted for the first time in his amended complaint, filed December 15, 2022, is time-barred.   Accordingly, the Court will grant Defendants' motion to dismiss this claim, and the Section 1983 claim against Officer Elezovic (Count I) will be dismissed with prejudice because any attempt to re-assert it would be futile.

### 2.    Section 1983 Municipal Liability Claim against the Township

Municipalities such as Lower Paxton Township are considered "persons" under § 1983 and may be held liable for injuries caused by violations of constitutional rights.   See Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).   They can only be held liable, however, "for their own illegal acts."   See Pembaur v. Cincinnati, 475 U.S. 469, 481 (1986).   It is only when a municipality's "execution of [a] policy or custom . . . inflicts the injury" that the municipality "as an entity is responsible under § 1983."   See Monell, 436 U.S. at 694.   To plead a Section 1983 claim against a municipality, a plaintiff must allege (1) an underlying constitutional violation (2) caused by the municipality's execution of a municipal policy or custom.   See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).

A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers."   See City of Canton v. Harris, 489 U.S. 378, 385 (1989).   A custom is "an act 'that has not been formally approved by an appropriate decision maker,' but is 'so widespread as to have the force of law.'"   See Natale, 318 F.3d at 584 (quoting Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997)).

In order to recover from a municipality under this theory of liability, a plaintiff must show "a direct causal link between the municipal policy or custom and the alleged constitutional deprivation." See City of Canton, 489 U.S. at 385. Complaints alleging municipal liability under Section 1983 are not subject to heightened pleading standards. See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). However, a plaintiff attempting to establish a Monell claim must "identify a custom or policy, and specify what exactly that custom or policy was." See McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).

In the alternative, a municipality may be liable under Section 1983 for a failure to train, monitor, or supervise—however, the failure alleged in such a circumstance must amount to "deliberate indifference to the constitutional rights of persons with whom the police come in contact." See City of Canton, 489 U.S. at 388. To establish deliberate indifference in this context, a plaintiff must generally show the failure alleged "has caused a pattern of violations." See Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000). Where a failure to train claim is alleged based on a single incident, the complaint must contain allegations that policymakers "kn[e]w to a moral certainty" that the alleged constitutional deprivation would occur and the need for further training "must have been plainly obvious." See City of Canton, 489 U.S. at 390 n.10. Further, "[l]iability cannot rest only on a showing that the employees 'could have been better trained or that additional training was available that would have reduced the overall risk of continued injury.'" See Thomas v. Cumberland County, 749 F.3d 217, 226 (3d Cir. 2014) (citing Colburn v. Upper Darby Township, 946 F.2d 1017, 1029–30 (3d Cir. 1991)).

Defendants challenge Plaintiff's assertion of a Section 1983 municipal liability claim

against the Township on two grounds.   First, Defendants argue that Plaintiff's Second Amended

Complaint "fails to articulate the provision of the Constitution upon which he relies in asserting

his constitutional claims"—although they recognize that a "deprivation of constitutional rights

secondary to a vehicular police pursuit" is assessed pursuant to the Due Process Clause of the

Fourteenth Amendment (Doc. No. 33 at 12) (citing County of Sacramento v. Lewis, 523 U.S.

833 (1998))—and that Plaintiff "must establish an intent to harm," but "fails to allege any

properly asserted facts to 'show' an intent to harm or worsen the plight of Plaintiff's Decedent"

(id. at 12–13).

Second, Defendants maintain that Plaintiff's Second Amended Complaint "contains no

factual reference to the existence of a specific policy" and does not "state facts sufficient to

sustain a claim based upon a failure to train."   (Id. at 15.)   Defendants argue that the Second

Amended Complaint "does nothing more than attempt to substitute conclusory allegations for the

requisite facts in an effort to parrot the Monell requirements" (id. at 16), and accordingly,

Plaintiff's Section 1983 municipal liability claim is subject to dismissal.

In response, Plaintiff argues that his claim of municipal liability is "sufficiently specific,

when considering Defendant[s'] concealment of all policies, procedures, customs and practice, to

survive a Motion for Dismissal."   (Doc. No. 36 at 11.)   Plaintiff maintains that his Second

Amended Complaint sets forth a Monell claim based upon "negligent hiring, training,

supervision and discipline as it relates to Officer Elezovic" and "a failure to implement and

enforce procedural policies to prevent foreseeable accidents as it relates to a high speed chase

initiated without probable cause."   (Id. at 12.)   Plaintiff also maintains that "in order to

successfully prosecute a municipal claim for liability under Monell, it is imperative that the

municipality produce written and unwritten policies and procedures relevant to the facts of the

case" and that, "[w]ithout the benefit of discovery on this issue, [he] has [pleaded] general facts related to this claim of municipal liability." (Id. at 13.) Plaintiff requests that if the Court finds his Monell claim "lacking in requisite specificity," it grant Defendants' motion to dismiss without prejudice to his right to file a third amended complaint "after Defendant is compelled to produce all relevant policies, procedures, customs and practices as it relates to the facts of this case." (Id.)

Upon careful consideration of the Second Amended Complaint, the parties' briefing, and relevant authority, the Court concludes that Plaintiff has failed to plausibly allege a Section 1983 municipal liability claim against the Township. As an initial matter, the Court notes that a deprivation of a constitutional right related to a vehicular police pursuit is analyzed pursuant to the Due Process Clause of the Fourteenth Amendment. See County of Sacramento v. Lewis, 525 U.S. 833 (1998). In Lewis, the Supreme Court stated that "the substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" See id. at 847 (quoting Collins v. Harker Heights, 503 U.S. 115, 128 (1992)); see also Kneipp, 95 F.3d at 1207 ("The appropriate standard to be applied in police pursuit cases involving an alleged violation of substantive due process is the 'shocks the conscience' test"). In accordance with this standard, the Supreme Court held in Lewis that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment." See Lewis, 525 U.S. at 854. Under this standard, a plaintiff must allege facts showing an "intent to harm" on the part of a pursuing police officer to plausibly allege a constitutional violation.

Plaintiff's Second Amended Complaint avers as follows:

> The actions of police officer Michael Elezovic here in initiating a high speed chase without sufficient justification or probable cause, in violation of unknown policies and procedures, and continuing the chase in despite his superior's express order to terminate the chase, "shocks the conscious", and evidences an intent to inflict harm upon the decedent . . . .

(Doc. No. 21 at 3 ¶ 13.)

Having previously alleged that Decedent "was lawfully operating a vehicle" (Doc. No. 21 at 2 ¶ 6), and then that Officer Elezovic "allegedly observed [Decedent's] vehicle 'not utilizing his turn signal 100 feet prior to commencing a turn, and stopping for 4-6 seconds at a stop sign'" before beginning a "high speed chase" of Decedent, who "fled" from Officer Elezovic (id. at ¶¶ 7–8), the above allegations of the Second Amended Complaint fail to plead facts showing an "intent to harm" on the part of Officer Elezovic, as required to plausibly allege a substantive due process violation.   In Lewis, the Supreme Court stated that "conduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."   See Lewis, 523 U.S. at 834 (emphasis added). Here, as alleged by Plaintiff in the Second Amended Complaint, the high-speed chase that led to Decedent's death began when Officer Elezovic allegedly observed Decedent's vehicle in violation of traffic laws, and Plaintiff's Decedent fled from Officer Elezovic rather than stop his vehicle.   Even taken as true, these facts do not reflect a deliberate intent to injure "unjustifiable by any government interest."   See id.

Plaintiff appears to suggest that Officer Elezovic should not have pursued Plaintiff's Decedent as an initial matter because Plaintiff was "lawfully operating [his] vehicle."   (Doc. No. 21 at 2 ¶ 6.)   This argument is unavailing because "[t]he Supreme Court has held on multiple occasions that the decision to engage in flight and to ignore police warnings to stop causing risk to innocent bystanders results, not from the pursuit by law enforcement, but from the fleeing

suspect intentionally placing himself and others in danger by unlawfully engaging in reckless flight." See Koreny v. Smith, No. 17-cv-00371, 2018 WL 1141513, at *8 (W.D. Pa. Mar. 2, 2018).

Plaintiff's allegation that Officer Elezovic "continu[ed] the chase [] despite his superior's express order to terminate the chase" does not change the analysis.   Indeed, in Davis v. Township of Hillside, 190 F.3d 167 (1999), the Third Circuit addressed a similar substantive due process claim alleging that a police officer involved in a vehicular pursuit "willfully violated applicable police department regulations" in connection with the pursuit.   See id. at 170.   In so doing, the Third Circuit noted that Lewis "squarely refutes plaintiff's contention that the officers' violation of police department regulations, which might be probative of recklessness or conscious disregard of plaintiff's safety, suffices to meet the shocks-the-conscience test under the due process clause."   See id.   Accordingly, even assuming the truth of Plaintiff's allegation that Officer Elezovic continued the chase in violation of a superior's order[4] (and potentially

---

[4]   Although Plaintiff's allegation describing police officer conduct in direct violation of command is not dispositive, the Court notes, as described more fully above, that Defendants represent that, before filing the Second Amended Complaint, Plaintiff was supplied evidence from Defendants that directly contravenes this allegation, and that Defendants agreed to Plaintiff's filing of a Second Amended Complaint for the specific purpose of Plaintiff's assertion of facts consistent with the sequence of events reflected in the MVR footage from Officer Elezovic's vehicle.   (Doc. No. 26 at 2.)   The Court reminds Plaintiff's counsel of his obligations under Federal Rule of Civil Procedure 11 in connection with the filing of any pleading in this Court.   Rule 11(b) provides, in relevant part, as follows:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

. . . .

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for

violated township regulations), the Second Amended Complaint fails to plausibly allege a substantive due process violation and therefore fails to allege a Section 1983 claim against Officer Elezovic.

Despite Plaintiff's failure to plausibly allege a substantive due process violation against Officer Elezovic, however, Third Circuit precedent pertaining to police pursuit "requires the district court to review the plaintiff['s] municipal liability claim[] independently of the section 1983 claim[] against [an] individual police officer[], as the [Township's] liability for a substantive due process violation does not depend upon the liability of any police officer."  See Kneipp, 95 F.3d at 1213.   Under the Third Circuit's decision in Fagan v. City of Vineland, 22 F.3d 1283 (3d Cir. 1994), "a municipality can be liable under section 1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, even if no individual officer participating in the chase violated the Constitution."  See id. at 1294; see also Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 n.5 (3d Cir. 2003) (noting that the Third Circuit "carefully confined Fagan to its facts: a substantive due process claim resulting from a police pursuit").

The relevant allegations of Plaintiff's Second Amended Complaint are as follows:

16. The Lower Paxton Township at all relevant times has maintained a policy, custom or practice of deliberate indifference to the hiring, training, supervision, and discipline of its police officers, despite knowing that those police officers would come into contact with citizens such as Plaintiff's decedent.

17. In accordance with this municipal policy of deliberate indifference, police officer Michael Elezovic was improperly hired, trained, supervised, and disciplined, and should not have initiated a high speed chase for Plaintiff's decedent with justification or probable cause, and continue that chase in violation

---

further investigation or discovery.

See Fed. R. Civ. P. 11(b)(3).   An attorney failing to comply with Rule 11 may be subject to sanctions.   See Fed. R. Civ. P. 11(c).

of an order to terminate same by his supervisor.

18. The aforesaid Lower Paxton policy, custom or practice of deliberate indifference to the hiring, training, supervision, or discipline of its police officers who would come into contact with citizens was the direct, proximate cause of the death of Decedent.

19. It is believed and therefore averred that Lower Paxton Township, at all relevant times, had, or should have had, policies in place to ensure high speed chases are only initiated in truly emergent circumstances, and only with sufficient probable cause, to prevent foreseeable accidents and injuries to members of the public, including Plaintiff's decedent.

20. In accordance with a municipal policy or indifference, Lower Paxton Township failed to implement and/or enforce appropriate policies and procedures to limit high speed chases to only emergent circumstances, which, if properly implemented and/or enforced, would have prevented this accident from having occurred.

21. The aforementioned policy, custom or practice of Lower Paxton Township or deliberate indifference to the danger associated with their officers engaging in high speed chases without probable cause, and failure to implement and/or enforce appropriate policies and procedures regulating high speed chases, "shocks the conscious", and was the direct proximate cause of the death of the decedent.

(Doc. No. 21 at 4–5, ¶¶ 16–21.)

Even accepting these sweeping allegations in the Second Amended Complaint as true, and drawing all inferences from them in Plaintiff's favor, Plaintiff's "allegations related to the claimed custom or policy . . . are too vague and conclusory to show evidence of an actionable custom or policy on the part of the [Township]."   See Garcia v. Phila. Dist. Att'y's Off., No. 23-01224, 2023 WL 3730604, at *2 (3d Cir. June 1, 2023) (unpublished) (citing Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997); and then citing McTernan, 564 F.3d at 659); see also id. at 658 (noting that to plead a Monell claim, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was")).   The Second Amended Complaint fails to allege any facts related to the existence of a municipal policy or custom, how the alleged policy or custom allowed the alleged constitutional violation to occur, or identify a policymaker or

decisionmaker responsible for a policy or custom.   The allegations consist of conclusory assertions that parrot the relevant legal standard rather than pleading specific facts.

Furthermore, with regard to a failure to train Monell claim, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."   See Connick v. Thompson, 563 U.S. 51, 62 (2011).   Here, given Plaintiff's reliance on this single incident to support his claim, Plaintiff must—but fails—to allege that policymakers "knew to a moral certainty" that the alleged deprivation would occur and that the need for further training was accordingly "plainly obvious." See City of Canton, 489 U.S. at 390 n.10.   Instead, Plaintiff's allegations as set forth above are consistent with an assertion that "the employees 'could have been better trained or that additional training was available that would have reduced the overall risk of continued injury,'" which is insufficient to plausibly allege a failure to train Monell claim.   See Thomas, 749 F.2d at 226 (citation omitted).   In addition, Plaintiff has not identified a "failure to provide specific training that has a causal nexus with [his claim]" and has not pleaded facts indicating "that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivation[] occurred."   See Reitz, 125 F.3d at 145 (citing Colburn, 946 F.2d at 1030); see also, e.g., Pahler v. City of Wilkes-Barre, 207 F. Supp. 2d 341, 353 (M.D. Pa. 2001) (dismissing failure to train claim where the plaintiff pleaded no facts to support the contention that his injuries were caused by a failure to train, failed to identify the specific training the city should have offered, and failed to plausibly allege that training was not provided).   Claims of failures to supervise, discipline, and monitor cannot be pleaded in a conclusory manner.   See, e.g., Moresi v. City of Philadelphia, No. 15-cv-00038, 2015 WL 4111724, at *4 (E.D. Pa. July 8, 2015) (dismissing Monell claims asserting "failure to

investigate, supervise, or discipline [] police officers" where, "[a]part from the single incidence of alleged police misconduct against [the plaintiff], [the plaintiff] plead[ed] no other facts necessary to establish a municipal liability claim").

Accordingly, because Plaintiff's Second Amended Complaint fails to plead facts plausibly alleging a substantive due process violation caused by the Township's policy, custom, or failure to train, as required to state a claim for Section 1983 municipal liability under Monell, the Court will grant Defendants' motion to dismiss Plaintiff's Section 1983 municipal liability claim (Count II).

### 3.    Leave to Amend

Defendants request that this Court dismiss Plaintiff's Section 1983 claims with prejudice and without further leave to amend.   (Doc. No. 33 at 17.)   Plaintiff, on the other hand, asks that any dismissal of his claims be without prejudice to his ability to file a third amended complaint "after Defendant is compelled to produce all relevant policies, procedures, customs and practices as it relates to the facts of this case."   (Doc. No. 36 at 13.)

District courts must generally extend plaintiffs an opportunity to amend a complaint before dismissal in civil rights cases, unless doing so would be inequitable or futile.   See Fletcher-Harlee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007).   The Court notes that Plaintiff has had the opportunity to file two amended versions of his complaint after receiving some discovery from the Township, but this is the first time the Court has specifically evaluated Plaintiff's federal claims.   Because this is the first time that Plaintiff has received guidance from the Court as to what is required to state a Section 1983 municipal liability claim against the Township—specifically, facts plausibly alleging a substantive due process violation caused by the Township's execution of a custom or policy or failure to

train—the Court will grant Defendants' motion to dismiss Plaintiff's Section 1983 municipal liability claim (Count II) without prejudice and permit Plaintiff a final opportunity to amend his complaint to attempt to state such a claim.

However, the Court will not grant Plaintiff's request for production of "written and unwritten policies and procedures related to the facts of the case" (Doc. No. 36 at 13) in connection with Plaintiff's opportunity to file a third amended complaint.   As noted above, Plaintiff has already received some amount of discovery from Defendants.   More importantly, and as previously stated by the Court, Plaintiff must first allege a plausible claim for relief before he is entitled to discovery.   See Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016) (noting that, to survive a motion to dismiss (and proceed to discovery), a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims").

### B.      Plaintiff's Negligence Claims

In light of the Court's resolution of Defendants' motion to dismiss Plaintiff's Section 1983 claims (Counts I and II), there is currently no viable federal claim before the Court supporting the exercise of supplemental jurisdiction over Plaintiff's state law negligence claims (Count III).   See Plasko v. City of Pottsville, 852 F. Supp. 1258, 1267 (E.D. Pa. 1994) (first citing United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966); and then citing Weaver v. Marine Bank, 683 F.2d 744, 746 (3d Cir. 1982)) ("Courts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed."). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law negligence claims asserted in Count III and will dismiss that count without prejudice to Plaintiff's ability to reassert the claims in a third amended complaint in this Court, or in state

28

court if no amended complaint is filed in this Court.

## IV.      CONCLUSION

For all the foregoing reasons, the Court will grant Defendants' motion to dismiss and will dismiss Plaintiff's claims against Officer Elezovic with prejudice and without leave to amend. The Court will dismiss Plaintiff's claims against the Township without prejudice and will grant Plaintiff leave to file an amended complaint that attempts to correct the pleading deficiencies identified herein.   An appropriate Order follows.

.

                                                   s/ Yvette Kane
                                                  Yvette Kane, District Judge
                                                  United States District Court
                                                  Middle District of Pennsylvania