## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD SMALL,                          :
in his own right and as Administrator   :       No. 1:22-cv-01146
of the Estate of Wally Small a/k/a Wallace :
Clarence Small, Deceased,               :       (Judge Kane)
    Plaintiff                       :
                                        :
    v.                              :
                                        :
LOWER PAXTON TOWNSHIP,                   :
    Defendant                       :

## <u>MEMORANDUM</u>

Before the Court are: (1) Defendant Lower Paxton Township ("Defendant" or the "Township")'s motion to dismiss the Third Amended Complaint (Doc. No. 41) filed by Plaintiff Richard Small ("Plaintiff"), in his own right and as Administrator of the Estate of Wally Small a/k/a Wallace Clarence Small, Deceased ("Decedent") (Doc. No. 45); and (2) Plaintiff's "Motion for Leave to File Interlocutory Appeal and Stay Proceedings" (Doc. No. 43).   For the reasons that follow, the Court will deny Plaintiff's motion for leave to file an interlocutory appeal and grant Defendant's motion to dismiss.

## I.       BACKGROUND

As noted in the Court's July 19, 2023 Memorandum and Order (Doc. Nos. 38–39) addressing Defendant's motion to dismiss Plaintiff's Second Amended Complaint, this case has an involved procedural history, which the Court sets forth below after detailing the factual background of Plaintiff's Third Amended Complaint.

A.      **Factual Background**[1]

Plaintiff avers that on July 23, 2020, at approximately 8:00 p.m., Decedent was "lawfully operating a vehicle" on the 1000 block of Avila Road in Lower Paxton Township, Pennsylvania. (Doc. No. 41 ¶ 6.)   At that same time and place, Officer Michael Elezovic ("Officer Elezovic"), acting under color of law and within the scope of his employment, "allegedly observed [Decedent's] vehicle 'not utilizing his turn signal 100 feet prior to commencing a turn, and stopping for 4-6 seconds at a stop sign', and based on these alleged observations, decided to commence a high speed chase." (Id. ¶ 7.)   Plaintiff alleges that Decedent "was understandably fearful when a white police officer would try to stop him without cause just a few weeks after the tragic murder of George Floyd at the hands of a white police officer[] in Minneapolis, MN, and therefore fled." (Id. ¶ 8.)   Plaintiff avers that, after Officer Elezovic called in the chase to dispatch and "provided his justification, he was informed by his supervisor Corporal Pachalski to terminate the chase immediately." (Id. ¶ 9.)   Plaintiff asserts that "[i]t is believed and therefore averred that since his justification for probable cause was insufficient, in violation of custom and practice, and likely in violation of internal policies and procedures of Lower Paxton Township concerning the initiation and continuation of high speed chases, the specifics of which [sic] have thus far concealed and yet to disclose." (Id.)   Plaintiff alleges that "[t]his high speed chase continued for approximately one and one half miles, reaching speeds in excess of 80 miles per hour, through residential areas and a school zone, before leaving the jurisdiction of Lower Paxton Township, and continuing into Susquehanna Township, where, predictably, the chase terminated in a four (4) vehicle motor vehicle accident at the intersection of Union Deposit Road

---

[1]  The factual background is drawn from Plaintiff's Third Amended Complaint, the allegations of which the Court accepts as true for purposes of the pending motion to dismiss.  See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).

and South Progress Avenue, Susquehanna Township."   (Id. ¶ 10.)   "As a result of this

occurrence, Plaintiff[']s[] [D]ecedent was caused to sustain severe injuries, including internal

injuries, blunt impact trauma to his torso and other injuries, which ultimately led to the

declaration of his death at Hershey Medical Center at approximately 8:42 p.m. on July 23,

2020."   (Id. ¶ 11.)

      **B.**     **Procedural Background**

      On July 25, 2022, the Township filed a Notice of Removal (Doc. No. 1) removing this

case, which was originally filed by Plaintiff on July 1, 2022, in the Dauphin County Court of

Common Pleas, to this Court and attaching the state court complaint (id.).   Plaintiff's state court

complaint asserted negligence allegations against the Township but also included the base

assertion that the Township "also violated the Constitutional Civil Rights of Plaintiff's

decedent."   (Id.)   Accordingly, in reliance on that assertion, the Township removed the case to

this Court, asserting federal question jurisdiction.   (Id. at 1–2.)

      On August 1, 2022, the Township filed a motion to dismiss Plaintiff's complaint pursuant

to Federal Rule of Civil Procedure 12(b)(6).   (Doc. No. 3.)   On August 15, 2022, the Township

filed a brief in support of its motion to dismiss in accordance with Local Rule of Court 7.5.

(Doc. No. 5.)   Plaintiff subsequently filed a letter request for an extension of time—until

October 1, 2022—to respond to the motion to dismiss (Doc. No. 6), which request the Court

granted (Doc. No. 7).   On September 27, 2022, Plaintiff filed a motion to compel discovery

(Doc. No. 8), requesting that the Court enforce discovery obligations imposed in state court prior

to removal of the case to this Court.   The Court scheduled a status conference with the parties

(Doc. No. 9), during which the Township's counsel volunteered to provide the requested

discovery to Plaintiff's counsel, and Plaintiff's counsel requested an additional extension of time

to respond to the pending motion to dismiss; accordingly, upon the conclusion of that conference, the Court issued an Order granting Plaintiff an extension of time until October 17, 2022, to respond to the Township's motion to dismiss and denying Plaintiff's motion to compel as moot (Doc. No. 11).   Thereafter, on October 13, 2022, Plaintiff filed a concurred-in motion for an extension of time to respond to the Township's motion to dismiss (Doc. No. 12), which the Court granted (Doc. No. 13), making Plaintiff's response due November 1, 2022.

On November 1, 2022, Plaintiff filed a Reply to the Township's Motion to Dismiss and Cross Motion for Leave to File an Amended Complaint (Doc. No. 14), along with a brief in support (Doc. No. 14-2).   In his motion, Plaintiff represented that "[o]n October 24, 2022, [the Township] finally provided answers to discovery and produced documents which provide the factual background for the initiation and continuation of this high-speed chase, which ultimately led to Plaintiff's decedent's untimely death" and, on that basis, "request[ed] leave of Court to file an Amended Complaint pursuant to FRCP 15(a)(2)."   (Doc. No. 14 ¶¶ 7–8.)   Plaintiff stated that he requested defense counsel's consent to his cross-motion but received no response.   (Id. ¶ 8.)   The Township did not file a brief in opposition to Plaintiff's Cross Motion for Leave to File an Amended Complaint within fourteen (14) days of the filing of Plaintiff's brief in support of his motion.   Accordingly, the Court deemed the motion unopposed in accordance with Local Rule of Court 7.6 and granted Plaintiff's Cross Motion by Order dated November 28, 2022, providing Plaintiff twenty (20) days within which to file an amended complaint.   (Doc. No. 15.)  That Order also denied the Township's motion to dismiss the complaint.   (Id.)

Subsequently, on December 15, 2022, Plaintiff filed an amended complaint.   (Doc. No. 16.)   In addition to the claims asserted in the original complaint, the amended complaint explicitly asserted a 42 U.S.C. § 1983 ("Section 1983") municipal liability claim against the

Township and added Officer Elezovic as a defendant, asserting Section 1983 and negligence

claims against him.   (Id.)   On December 29, 2022, the date any response to Plaintiff's amended

complaint was due, the Township filed two motions: (1) a Joint Motion for Leave to Amend

(Doc. No. 18); and (2) a Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 19).   In

the Joint Motion for Leave to Amend the Township represented as follows:

> 4. Counsel for Defendant Lower Paxton Township and Plaintiff Richard Small have discussed Defendant's request that Plaintiff agree to amend his Complaint to allege facts consistent with the undisputed facts of record, notably that an order to discontinue the pursuit was not provided until after the car crash at issue had occurred.
>
> 5. The date of this motion, December 29, 2022, is also the deadline for which a response to Plaintiff's Amended Complaint was to be filed.   Counsel for Defendant apologizes for the short notice provided to the Court regarding the subject of this motion.
>
> 6. Counsel for both Plaintiff and Defendant have discussed this motion and submit it as a joint motion for enlargement to this Honorable Court to allow the pleadings to best represent the facts of record.
>
> 7. Defendant concurs to an amendment as proposed but in the event that the amendment is not made, Defendant respectfully requests an enlargement of time to respond to Plaintiff's Amended Complaint as currently filed.
>
> WHEREFORE, the parties request that this Honorable Court provide leave for Plaintiff to file a Second Amended Complaint, or in the alternative enlarge the deadline to respond to Plaintiff's Amended Complaint.

(Doc. No. 18 at 3.)

Faced with these twin filings, the Court construed the first motion as representing the

parties' joint desire that Plaintiff be permitted the opportunity to file a second amended

complaint, and given the first motion's filing on the same day that the Township's response to

the operative amended complaint was due to be filed, the Court viewed the Township's filing of

a motion to dismiss the amended complaint as protective of its rights in the event the Court

declined to grant the parties' Joint Motion for Leave to Amend.   Accordingly, on January 4,

2023, the Court granted the parties' Joint Motion for Leave to Amend, providing Plaintiff with a third opportunity to file a complaint in this matter and denied the Township's motion to dismiss. (Doc. No. 20.)

Plaintiff filed a Second Amended Complaint (Doc. No. 21) on January 23, 2023, again asserting negligence (Count III) and Section 1983 municipal liability (Count II) claims against the Township and Section 1983 (Count I) and negligence (Count III) claims against Officer Elezovic.[2]   On the same day, the Court received a letter from Plaintiff's counsel detailing a dispute between Plaintiff and the Township.   (Doc. No. 23.)   Specifically, the letter represented that the Township objected to three requests for production of documents seeking the following information:

> 18.    Lower Paxton Township Police Department complete policy and procedure manual for the operation of police vehicles including policies, procedures and directives for operation in a high speed chase or emergency situation.

> 19.    Lower Paxton Township Police Department directives for police pursuit, and pursuit outside Lower Paxton Township jurisdiction.

> . . . .

> 24.    A complete copy of the personnel file on Officer[] Michael Elezovic, as well as all investigative documents pertaining to any and all other high speed chases initiated or participated in by him, which culminated in a motor vehicle accident.

(Doc. No. 23-1 at 6–7.)   Plaintiff's letter represented that "[t]hese documents are crucial

---

[2]  The Second Amended Complaint sought a remedy pursuant to Pennsylvania's wrongful death statute, 42 Pa. C.S.A. § 8301 (Count IV), and survival statute, id. § 8302 (Count V).   (Doc. No. 21 at 7–9.)   Under Pennsylvania law, "wrongful death and survival actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death."   See Sullivan v. Warminster Twp., 765 F. Supp. 2d 687, 707 (E.D. Pa. 2011).   Accordingly, Plaintiff's Second Amended Complaint asserted essentially three claims: (1) a Section 1983 claim against Officer Elezovic (Count I); (2) a Section 1983 municipal liability claim against the Township (Count II); and (3) a negligence claim against

discovery to investigate the nature and extent of the municipality's liability on this claim."

(Doc. No. 23 at 1.)

The Court directed the Township to respond to Plaintiff's letter (Doc. No. 22), and

accordingly, on January 30, 2023, it filed a letter response (Doc. No. 26).   In that letter, the

Township's counsel represented as follows:

> As the Court is aware, Defendants requested that this Honorable Court dismiss the Monell claim as asserted in the first and second iterations of Plaintiff's Complaint.  We are now presented with Plaintiff's third attempt to assert such a claim in [his] Second Amended Complaint and in Defendants' view, the claim is still deficient, and Defendants anticipate filing a motion to dismiss the claim against the Township.   Against this background, Defendants have objected to providing the Lower Paxton Township police policies and procedures on the basis that Plaintiff[] ha[s] consistently failed to state a claim that could make such procedures relevant.   Defendants assert that its policies and procedures are proprietary and privileged absent a claim that warrants their production. Accordingly, Defendants submit there is a compelling reason to stay the discovery sought until such time as the Court determines that Plaintiff has asserted a viable claim.
>
> . . . .
>
> As the Court is aware, Defendants have endeavored to supply Plaintiff[] with all relevant information based upon the facts alleged in the Complaints.   To that end, Defendants have supplied Plaintiff[] with, inter alia, the mobile video recording ("MVR") footage from Officer Elezovic's vehicle.   This discovery is particularly relevant to Plaintiff's current claim that he requires the Township's policies and procedures to plead a claim against the Township.   The MVR footage and accompanying audio unequivocally demonstrates that the accident occurred less than two minutes after the pursuit was commenced and, contrary to the allegations in the Second Amended Complaint, moments before the order to discontinue was issued.

(Doc. No. 26 at 1–2.)   The Township's counsel requested that the Court "assess the viability of

Plaintiff's third effort to implicate the Township before ordering the production of the applicable

policies and procedures."   (Id. at 3.)

On February 6, 2023, Defendants filed a motion to dismiss Plaintiff's Second Amended

---

both defendants (Count III).

Complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).   (Doc. No. 30.)   Also on February 6, 2023, Plaintiff's counsel filed a reply to the January 30, 2023 letter submitted by Defendants' counsel.   (Doc. No. 29.) Plaintiff's counsel's letter did not respond to the Township's argument that Plaintiff's Second Amended Complaint pleaded facts contradicting the MVR footage produced by the Township to Plaintiff; instead, it argued that "in order to successfully prosecute a municipal claim for liability under Monell, it is imperative that the municipality produce written and unwritten policies and procedures relevant to the facts of the case, as well as the personnel file for the Officer involved."   (Id.)   Further, Plaintiff's counsel stated that, "[c]onsistent with its prior practice, the Defendant is once again attempting to conceal discovery in order to support another Motion to Dismiss," and "requested that the Court not sanction such impropriety and enter an Order striking the aforementioned Objections to production, and compel Defendant to produce the necessary documentation for Plaintiff's review."   (Id.)   Plaintiff also requested that "the Court afford the Plaintiff . . . an opportunity to file a Third Amended Complaint with greater specificity, once this discovery has been produced."   (Id.)

After careful consideration of Plaintiff's request, the Court declined to order the Township to produce the documents requested by Plaintiff and instead ordered a stay of discovery in this matter pending the Court's resolution of Defendants' Rule 12(b)(6) motion to dismiss.   (Doc. No. 31.)   In so doing, the Court noted that the purpose of Rule 12(b)(6) is to "streamline [] litigation by dispensing with needless discovery and factfinding," see Neitzke v. Williams, 490 U.S. 319, 326–27 (1989), and that Plaintiff must file a complaint that states a plausible claim before he is entitled to discovery, see Mann v. Brenner, 375 F. App'x 232, 239 (3d Cir. 2010) (unpublished) (finding no abuse of discretion in district court's conclusion that

plaintiff was not entitled to discovery prior to a Rule 12(b)(6) ruling because "[a] motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and therefore may be decided on its face without extensive factual development").   (Doc. No. 31 at 8.)   The Court also noted that Plaintiff already had the opportunity to file three versions of a complaint in this case, two of them after receiving some discovery from the Township, and that the pending motion to dismiss argued that all the claims asserted in Plaintiff's Second Amended Complaint were subject to dismissal for failure to state a claim upon which relief can be granted.   (Id.) Under such circumstances, the Court concluded that Plaintiff's outstanding discovery requests were not "proportional to the needs of the case."   See Fed. R. Civ. P. 26(b)(1); (Doc. No. 31 at 8).

Five days after the Court issued its February 16, 2023 Order, Defendants filed a brief in support of their motion to dismiss.   (Doc. No. 32.)   After the motion was fully briefed, on July 19, 2023, the Court issued a Memorandum and Order: (1) dismissing Plaintiff's Section 1983 claim against Officer Elezovic with prejudice as barred by the applicable statute of limitations; (2) dismissing Plaintiff's Section 1983 claim against the Township without prejudice to Plaintiff's ability to file a Third Amended Complaint addressing the pleading deficiencies identified by the Court in its Memorandum; and (3) in the absence of a viable federal claim, declining to exercise supplemental jurisdiction over Plaintiff's state law claims and dismissing those claims without prejudice to Plaintiff's ability to reassert the claims in a Third Amended Complaint.   (Doc. Nos. 38–39.)

More specifically, as to Plaintiff's Section 1983 claim against Officer Elezovic, the Court noted that:

> Plaintiff timely filed his initial complaint asserting claims against the Township on July 1, 2022, in the Dauphin County Court of Common Pleas, but did not file

an amended complaint asserting claims against Officer Elezovic until December 15, 2022, well past the two-year statute of limitations.   Therefore, as Plaintiff and Defendants acknowledge (Doc. Nos. 36 at 7–8; 33 at 8), Plaintiff's claims against Officer Elezovic are time-barred unless they relate back to Plaintiff's initial complaint.

(Doc. No. 38 at 12.)   The Court then addressed the relation back requirements of Federal Rule of Civil Procedure 15(c)(1)(C) and Plaintiff's argument that the Township "prevented him from identifying Officer Elezovic as a defendant prior to the filing of the amended complaint on December 15, 2022, because '[t]he only investigative document produced by the Defendant pre-litigation is the heavily redacted incident report'" and "that 'a fair reading of the heavily redacted incident report is that Officer Michael Elezovic was the responding officer to the accident itself, and may not have been the officer who initiated this illegal chase' and so was 'not specifically named as a party in Plaintiff's [o]riginal [c]omplaint.'"   (Id. at 14 (quoting Doc. No. 36 at 7–8).)   Ultimately, the Court concluded that Plaintiff failed to demonstrate that the relation back requirements of Rule 15(c)(1)(C) were met in this case, stating as follows:

> [E]ven if this Court assumes arguendo that Plaintiff has shown that Officer Elezovic had notice of the action within the 120-day timeframe referenced by Rule 15 and so would not be prejudiced in defending this case (an issue Plaintiff fails to address in his briefing beyond stating that "[t]he reference to Officer Elezovic in the [o]riginal [c]omplaint . . . put both Lower Paxton Township and Officer Elezovic on notice of his involvement"), the Court concludes that Plaintiff has failed to demonstrate the third requirement of relation back under Rule 15(c)(1)(C)—that Officer Elezovic "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity."   See Fed. R. Civ. P. 15(c)(1)(C).   While Plaintiff argues that this "mistake" was "manufactured by the Defendant's concealment of the true facts" (Doc. No. 36 at 9), Plaintiff's naming of Officer Elezovic in his original complaint indicates that Plaintiff was aware that Officer Elezovic had a role of significance in the events underlying this case (and can even be fairly construed as reflecting that Officer Elezovic was the driver of the vehicle involved in the police pursuit).   Under such circumstances, Plaintiff cannot demonstrate that he made a "mistake concerning the proper party's identity."   See Garvin v. City of Philadelphia, 154 F.3d 215, 221–22 (3d Cir. 2003) (stating that "an amended complaint will not relate back if the plaintiff had been aware of the identity of the newly named party when she filed her original complaint and simply chose not to

> sue them at that time").   Whether Plaintiff's failure to name Officer Elezovic as a
> defendant in the original complaint was a "tactical" choice, as the Township
> describes it, or one of omission, Plaintiff's Section 1983 claim against Officer
> Elezovic, asserted for the first time in his amended complaint, filed December 15,
> 2022, is time-barred.   Accordingly, the Court will grant Defendants' motion to
> dismiss this claim, and the Section 1983 claim against Officer Elezovic will be
> dismissed with prejudice because any attempt to re-assert it would be futile.

(Doc. No. 38 at 17–18.)   In accordance with the Court's conclusion, the July 19, 2023 Order

dismissed Plaintiff's Section 1983 claim against Officer Elezovic with prejudice.   (Doc. No. 39.)

As to Plaintiff's Section 1983 claim against the Township, the Court concluded that the

Second Amended Complaint failed to plausibly allege such a claim, for the following reasons:

(1) Plaintiff failed to allege facts showing an "intent to harm" on the part of a pursuing police

officer as required to plausibly allege a violation of substantive due process in the police pursuit

context; (2) even assuming the truth of Plaintiff's allegation that the pursuing officer continued

the pursuit in violation of Township orders or policy, such an allegation did not suffice to meet

the shocks-the-conscience test under the due process clause; and (3) Plaintiff's allegations

regarding the existence of a municipal policy or custom or a failure to train were too vague and

conclusory to plausibly allege a Section 1983 claim against the Township.   (Id. at 21–27.)   The

Court's Order dismissed Plaintiff's Section 1983 claim against the Township without prejudice

to Plaintiff's ability to file an amended complaint addressing the pleading deficiencies identified

in the Court's Memorandum, within twenty-one (21) days.   (Doc. No. 39 at 1.)[3]

Thereafter, on August 3, 2023, Plaintiff filed a Notice of Appeal (Doc. No. 40) of the

Court's July 19, 2023 Order.   See (Doc. No. 40 (stating that "Plaintiff in the above case hereby

appeals to the United States Court of Appeals for the Third Circuit, from the Order dismissing

---

[3]  In the absence of a viable federal claim, the Court declined to exercise supplemental
jurisdiction over Plaintiff's state law claims and therefore also dismissed those claims without
prejudice to Plaintiff's ability to reassert them in a Third Amended Complaint.   (Id.)

Count I of Plaintiff's Second Amended Complaint with prejudice")).[4]   Six days later, on August 9, 2023, and in accordance with the timeframe set forth in the Court's July 19, 2023 Order, Plaintiff filed a Third Amended Complaint reasserting Section 1983 and negligence claims against the Township.   (Doc. No. 41.)   Five days after that, on August 14, 2023, Plaintiff, apparently recognizing the non-final nature of the Court's July 19, 2023 Order and his inability to appeal it absent permission from this Court pursuant to 28 U.S.C. § 1292(b), filed the pending "Motion for Leave to Appeal Interlocutory Order and Stay Proceedings."[5]   (Doc. No. 43.) Plaintiff filed a brief in support of his motion the next day.   (Doc. No. 44.)

Meanwhile, in light of Plaintiff's filing of a Third Amended Complaint, Defendant filed the pending motion to dismiss the Third Amended Complaint (Doc. No. 45), on August 23, 2023, followed fourteen (14) days later by a brief in support of the motion (Doc. No. 46).   On September 20, 2023, Plaintiff filed a response (Doc. No. 48), as well as a brief in opposition to Defendant's motion to dismiss (Doc. No. 47).   Accordingly, both pending motions are ripe for disposition.

---

[4]  Plaintiff's appeal of this Court's July 19, 2023 Order permitting Plaintiff to file an amended complaint did not divest the Court of jurisdiction over this case.   See Bensalem Township v. Intl. Surplus Lines Ins. Co., 38 F.3d 1303, 1314 (3d Cir. 1984) (quoting Mondrow v. Fountain House, 867 F.2d 798, 800 (3d Cir. 1989) (holding that a "premature notice of appeal does not divest the district court of jurisdiction")).   Subject to limited exceptions not applicable here, an appeal can only be taken from a final order of a district court.   See 28 U.S.C. § 1291.   "Only if the plaintiff cannot amend or declares [his] intention to stand on [his] complaint does [an] order become final and appealable."   See Borelli v. City of Reading, 532 F.2d 950, 951–52 (3d Cir. 1976) (per curiam).   Accordingly, this Court retains jurisdiction over this action.

[5]  Upon review of the Third Circuit's docket relating to Plaintiff's appeal of this Court's July 19, 2023 Order, see Small v. Township of Lower Paxton, et al., No. 23-2408 (3d Cir. filed August 10, 2023), the Court notes that, on the same date that Plaintiff's appeal was docketed by the Third Circuit, the clerk of that court issued an order advising that the case was listed for possible dismissal due to a jurisdictional defect, see id., ECF No. 4.   In response to the Third Circuit's order, Plaintiff filed a copy of his "Motion for Leave to File Interlocutory Appeal" filed in this Court.   See Small v. Township of Lower Paxton, No. 23-2408 (3d Cir. Aug. 23, 2023), ECF No.

## II.    LEGAL STANDARDS

### A.    Motion for Certification of Interlocutory Appeal

28 U.S.C. § 1292(b) provides for the immediate appeal of an interlocutory order of a

district court under the following circumstances:

> When a district judge, in making in a civil action an order not otherwise
> appealable under this section, shall be of the opinion that such order involves a
> controlling question of law as to which there is substantial ground for difference
> of opinion and that an immediate appeal from the order may materially advance
> the ultimate termination of the litigation, he shall so state in writing in such order.
> The Court of Appeals which would have jurisdiction of an appeal of such action
> may thereupon, in its discretion, permit an appeal to be taken from such order.

See 28 U.S.C. § 1292(b).   Accordingly, the "three criteria for the district court's exercise of

discretion to grant a § 1292(b) certificate" consist of the Court's determination that an order "(1)

involve a 'controlling question of law,' (2) offer 'substantial ground for difference of opinion' as

to its correctness, and (3) if appealed immediately 'materially advance the ultimate termination

of the litigation.'"   See Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir. 1974) (quoting

28 U.S.C. § 1292(b)).   Even if the three statutory criteria are satisfied, a district court retains

"discretion to deny certification of an [interlocutory] appeal."   See In re Chocolate

Confectionary Antitrust Litig., 607 F. Supp. 2d 701, 708 (M.D. Pa. 2009) (citing Bachowski v.

Usery, 545 F.2d 363, 368 (3d Cir. 1976)).   Certification under 28 U.S.C. § 1292(b) is

appropriate only under "exceptional circumstances."   See Knopick v. Downey, 963 F. Supp. 2d

378, 398 (M.D. Pa. 2013) (quoting Caterpillar Inc. v. Lewis, 519 U.S. 61, 74 (1996)).

The first requirement for certification is that an order involve a "controlling question of

law."   "A question of law is controlling if: (1) an incorrect disposition would constitute

reversible error, or (2) it is serious to the litigation, either practically or legally."   Sayles v.

5.

Allstate Ins. Co., No. 3:16-cv-01534, 2017 WL 2985402, at *2 (M.D. Pa. July 13, 2017) (citing

Katz, 419 F.2d at 755).   The Third Circuit has noted that "on the practical level, saving of time

of the district court and of expense to the litigants . . . [are] highly relevant factor[s]."   See Katz,

496 F.2d at 755; see also 19 James Wm. Moore, et al., MOORE'S FEDERAL PRACTICE §

203.319[3] (3d ed. 2013) (stating that a controlling question of law is one that "has the potential

of substantially accelerating disposition of the litigation").

        As to the second requirement for certification, it is clear that a party's disagreement with

the district court's ruling does not constitute a "substantial ground for difference of opinion"

within the meaning of the statute.   See In re Chocolate Confectionary Antitrust Litig., 607 F.

Supp. 2d at 706.   Rather, a "substantial ground for difference of opinion exists when there is a

genuine doubt or conflicting precedent as to the correct legal standard" to be applied in the order

at issue.   See Juice Entm't, LLC v. Live Nation Entm't, Inc., 353 F. Supp. 3d 309, 313 (D.N.J.

2018) (quotation omitted); Knipe v. SmithKline Beecham, 583 F. Supp. 2d 553, 599 (E.D. Pa.

2008).   The difference of opinion must involve "one or more difficult and pivotal questions of

law not settled by controlling authority."   See Sayles, 2017 WL 2985402, at *2 (quotations and

citations omitted); Knipe, 583 F. Supp. 2d at 599.   The moving party may meet its burden to

demonstrate a "substantial ground for difference of opinion" by showing that "different courts

have issued conflicting and contradictory opinions when interpreting a particular question of

law," see Vares-Ebert v. Township of Hamilton, No. 15-cv-07331, 2020 WL 948774, at *2–3

(D.N.J. Feb. 27, 2020), or by demonstrating the absence of controlling law on a particular issue,

see Sayles, 2017 Wl 2985402, at *2; Knipe, 583 F. Supp. 2d at 600.

        With regard to the third requirement, the statute requires the moving party to demonstrate

that an interlocutory appeal may "materially advance the ultimate termination of the litigation."

See 28 U.S.C. § 1292(b).   "Several factors are pertinent in determining whether an immediate appeal would materially advance the ultimate termination of the litigation, including: (1) whether the need for trial would be eliminated; (2) whether the trial would be simplified by the elimination of complex issues; and (3) whether discovery could be conducted more expeditiously and at less expense to the parties."   Patrick v. Dell Fin. Servs., 366 B.R. 378, 387 (M.D. Pa. 2007) (citing Interwave Tech., Inc. v. Rockwell Automation, Inc., No. 05-cv-00398, 2006 WL 401843, at *6 (E.D. Pa. Feb. 16, 2008).

### B.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.   See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).   The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.   See Fed. R. Civ. P. 8(a).   Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."   See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.   See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010).   The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).   Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."   See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).   To prevent

dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.   See id.   The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.   As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"   See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."   See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."   See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

## III.   DISCUSSION

The Court first addresses Plaintiff's motion for leave to file an interlocutory appeal before addressing Defendant's motion to dismiss Plaintiff's Third Amended Complaint.

### A.   Plaintiff's Motion for Leave to File Interlocutory Appeal

In his motion, Plaintiff asserts that the Court's July 19, 2023 Order:

involves a controlling question of law to which there is a substantial ground for difference of opinion regarding when Amendments should relate back to original pleadings, especially where, as here, there has been evidence of concealment preventing Plaintiff to properly plead in the first instance, and no prejudice upon the Defendants.  An immediate Appeal from that Order may materially advance the ultimate termination of the litigation.

(Doc. No. 43 at 3 ¶ 5.)

The Court will deny Plaintiff's motion seeking to certify the Court's July 19, 2023 Order for interlocutory appeal due to his complete failure to demonstrate an entitlement to such certification, a procedural vehicle appropriate only under "exceptional circumstances."  See Knopick, 963 F. Supp. 2d at 398 (quotation omitted).   Plaintiff's motion and supporting brief do not even mention 28 U.S.C. § 1292(b), much less persuasively demonstrate that its three criteria governing the Court's discretion to grant a Section 1292(b) certificate support the Court's certification of its July 19, 2023 Order for interlocutory appeal.   For example, with regard to the second requirement for certification, and as noted above, a party's disagreement with the district court's ruling does not constitute a "substantial ground for difference of opinion" within the meaning of the statute.   See In re Chocolate Confectionary Antitrust Litig., 607 F. Supp. 2d at 706.   Plaintiff's arguments in favor of certification, as expressed in his brief in support of his motion, consist of nothing more than disagreement with this Court's determination that Federal Rule of Civil Procedure 15(c)'s relation back provision did not apply to the Second Amended Complaint's asserted Section 1983 claim against Officer Elezovic so as to render the claim timely.   Plaintiff argues that:

> [w]here, as here, Plaintiff's failure to timely name Officer Michael Elezovic, as a party Defendant was based, in whole or in part on Defendant's active concealment of Officer Elezovic's role as it relates to this incident, it is respectfully submitted that the Court should have applied Rule 15(c)1(C) to allow Plaintiff's addition of Officer Elezovic as a party Defendant to relate back to the date of original filing.

(Doc. No. 44 at 1.)   Plaintiff cites no relevant authority in his filings, much less authority demonstrating "a genuine doubt or conflicting precedent as to the correct legal standard" to be applied by the Court.   See Juice Entm't, LLC, 353 F. Supp. 2d at 599.   Because Plaintiff has failed to demonstrate that the three criteria governing interlocutory appeal pursuant to 28 U.S.C. § 1292(b) are met here, the Court will deny Plaintiff's motion for leave to file interlocutory appeal.   The Court turns to Defendant's motion to dismiss Plaintiff's Third Amended Complaint.

### B.   Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint

Plaintiff's Third Amended Complaint asserts four claims against the Township: (1) municipal liability pursuant to 42 U.S.C. § 1983 (Count I); (2) negligence (Count II); (3) wrongful death (Count III); and (4) survival (Count IV).   As noted supra at note 2, while the Third Amended Complaint, like the Second Amended Complaint, seeks a remedy pursuant to Pennsylvania's wrongful death statute, 42 Pa. C.S.A. § 8301, and survival statute, id. § 8302, under Pennsylvania law, "wrongful death and survival actions are not substantive causes of action; rather they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death."   See Sullivan, 765 F. Supp. 2d at 707.   Accordingly, Plaintiff's Third Amended Complaint asserts essentially two claims—a Section 1983 municipal liability claim against the Township (Count I) and a negligence claim against the Township (Count II).   The Court first addresses Plaintiff's Section 1983 municipal liability claim.

### 1.   Plaintiff's Section 1983 Municipal Liability Claim

Section 1983 is the vehicle by which private citizens can seek redress for violations of federal constitutional rights committed by state officials.   See 42 U.S.C. § 1983.   The statute provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id.  Section 1983 "does not . . . create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws."  See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim for relief under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States" and "show that the alleged deprivation was committed by a person acting under color of state law."  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

Municipalities such as the Township are considered "persons" under § 1983 and may be held liable for injuries caused by violations of constitutional rights.  See Monell v. N.Y.C. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  They can only be held liable, however, "for their own illegal acts."  See Pembaur v. Cincinnati, 475 U.S. 469, 481 (1986).  It is only when a municipality's "execution of [a] policy or custom . . . inflicts the injury" that the municipality "as an entity is responsible under § 1983."  See Monell, 436 U.S. at 694.  To plead a Section 1983 claim against a municipality, a plaintiff must allege (1) an underlying constitutional violation (2) caused by the municipality's execution of a municipal policy or custom.  See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).

A municipal policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers."  See City of Canton v. Harris, 489 U.S. 378, 385 (1989).  A custom is "an act 'that has not been formally approved by an appropriate decision maker,' but is 'so widespread as to have the force of law.'"  See Natale,

318 F.3d at 584 (quoting Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997)).

In order to recover from a municipality under this theory of liability, a plaintiff must show "a

direct causal link between the municipal policy or custom and the alleged constitutional

deprivation."   See City of Canton, 489 U.S. at 385.   Complaints alleging municipal liability

under Section 1983 are not subject to heightened pleading standards.   See Leatherman v. Tarrant

Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).   However, a

plaintiff attempting to establish a Monell claim must "identify a custom or policy, and specify

what exactly that custom or policy was."   See McTernan v. City of York, 564 F.3d 636, 658 (3d

Cir. 2009).

　　　　In the alternative, a municipality may be liable under Section 1983 for a failure to train,

monitor, or supervise—however, the failure alleged in such a circumstance must amount to

"deliberate indifference to the constitutional rights of persons with whom the police come in

contact."   See City of Canton, 489 U.S. at 388.   To establish deliberate indifference in this

context, a plaintiff must generally show the failure alleged "has caused a pattern of violations."

See Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000).   Where a failure to train

claim is alleged based on a single incident, the complaint must contain allegations that

policymakers "kn[e]w to a moral certainty" that the alleged constitutional deprivation would

occur and the need for further training "must have been plainly obvious."   See City of Canton,

489 U.S. at 390 n.10.   Further, "[l]iability cannot rest only on a showing that the employees

'could have been better trained or that additional training was available that would have reduced

the overall risk of continued injury.'"   See Thomas v. Cumberland County, 749 F.3d 217, 226

(3d Cir. 2014) (citing Colburn v. Upper Darby Township, 946 F.2d 1017, 1029–30 (3d Cir.

1991)).

In arguing that Plaintiff's Section 1983 claim against it is subject to dismissal, Defendant first contends that Plaintiff's Third Amended Complaint fails to plead sufficient facts to sustain a municipal liability claim under either a "municipal policy or custom" or "failure to train" theory of liability.   (Doc. No. 46 at 8–11.)   Defendant asserts that "[t]he death knell to Plaintiff's Monell claim based upon an unconstitutional policy lies in Plaintiff's concession that the Township, through Corporal Pachalski, directed the pursuit to be terminated immediately upon learning of the pursuit and its justification."   (Id. at 11 (citing Doc. No. 41 at 2 ¶ 9).)   Defendant argues that "[t]his allegation severs the causal link between the conduct of the Township and the [a]ccident at issue" because, according to the allegations of the Third Amended Complaint, "upon learning of the chase the Township ordered its termination."   (Id. at 11–12.)

Further, Defendant argues that Plaintiff relies on an improper legal standard in connection with his municipal liability claim, noting that "Plaintiff pleads that a traffic violation and unusual driving behavior were 'insufficient' to warrant the initiation of the pursuit, and then alleges in a conclusory fashion that if the pursuing officer had been 'properly hired, trained, and supervised he would not have initiated a high-speed chase after Plaintiff's Decedent without justification or probable cause . . .'"   (Id. at 12.)   Defendant maintains that "[i]n so pleading, Plaintiff ignores the decades of case law making Plaintiff's Decedent responsible for his unwarranted and illegal flight from the officer and instead focuses exclusively upon the existence of probable cause to arrest."   (Id.)   However, Defendant argues that "[t]his is not the standard for imposition of constitutional liability in the context of a police pursuit" and "[i]nstead, such claims are regularly assessed under a substantive Due Process analysis."   (Id.)   Pursuant to the relevant standard, Defendant asserts that Plaintiff "has failed to plead facts indicating the pursuit lacked a legitimate government interest much less that the pursuit reflected an intent to harm"

and argues that "[t]he contrary is established by [Plaintiff's] pleading that acknowledges a traffic violation and Plaintiff's Decedent's decision to flee." (Id. at 14–15.)

In general, Defendant argues that Plaintiff's Third Amended Complaint contains conclusory allegations as opposed to facts related to the existence of a specific governmental policy or how that policy caused Plaintiff's Decedent's injuries. (Id. at 15–16.) Defendant asserts that "Plaintiff has failed to cure the defects that this Court found fatal to his prior pleading," instead parroting the relevant legal standard but failing to "plead any facts to support a pattern of similar constitutional violations that could arguably place [Defendant] on notice of a practice that was giving rise to constitutional injuries" or to "demonstrate[s] proof of knowledge and acquiescence by the policymaker of a custom that occurs with sufficient frequency to have the force of law." (Id. at 16.) Defendant asserts that "[o]n the contrary, Plaintiff continues to plead in conclusory fashion that had Officer Elezovic been properly hired, trained and supervised, and if Lower Paxton Township has [sic] proper policies and procedures, in place that were enforce[d], a high speed chase . . . would not have taken place . . . ." (Id. at 16 (quoting Doc. No. 41 at 4 ¶ 18).) Defendant maintains that because "it is the Plaintiff's fourth attempt to state such a claim, this claim should be dismissed with prejudice." (Id. at 17.)

In response, Plaintiff asserts that his Third Amended Complaint sets forth a municipal liability claim "premised upon negligent hiring, training, supervision and discipline as it relates to Office Elezovic, and a failure to implement and enforce procedural policies to prevent foreseeable accidents as it relates to a high speed chases initiated without probable cause," and argues that "[w]hile it is believed and therefore averred that Defendant had policies in place relating to the circumstances under which a police officer in Lower Paxton Township should initiate a high speed chase, Plaintiff is simply unable to specifically set forth those policies until

same are produced by Defendant."   (Doc. No. 48 at 6.)   Plaintiff further states that "[i]f the

Court finds Plaintiff's Third Amended Complaint lacking in requisite specificity, it is

respectfully requested that Defendant's Motion to Dismiss this Count be denied without

prejudice, and Defendant be compelled to produce all relevant policies, procedures, customs and

practices as it relates to the facts of this case, as well as the personnel file of Officer Elezovic."

(Id. at 7.)

 Upon careful consideration of the Third Amended Complaint, the parties' briefing, and

relevant authority, the Court concludes that Plaintiff has failed to plausibly allege a Section 1983

municipal liability claim against the Township.   As an initial matter, the Court notes, as it did in

its July 19, 2023 Memorandum, that a deprivation of a constitutional right related to a vehicular

police pursuit is analyzed pursuant to the Due Process Clause of the Fourteenth Amendment.

See County of Sacramento v. Lewis, 525 U.S. 833 (1998).   In Lewis, the Supreme Court stated

that "the substantive component of the Due Process Clause is violated by executive action only

when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional

sense.'"   See id. at 847 (quoting Collins v. Harker Heights, 503 U.S. 115, 128 (1992)); see also

Kneipp, 95 F.3d at 1207 ("The appropriate standard to be applied in police pursuit cases

involving an alleged violation of substantive due process is the 'shocks the conscience' test").

In accordance with this standard, the Supreme Court held in Lewis that "high-speed chases with

no intent to harm suspects physically or to worsen their legal plight do not give rise to liability

under the Fourteenth Amendment."   See Lewis, 525 U.S. at 854.   Under this standard, a

plaintiff must allege facts showing an "intent to harm" on the part of a pursuing police officer to

plausibly allege a constitutional violation.

 In this regard, Plaintiff's Third Amended Complaint avers as follows:

It is believed and therefore averred that the "justification" to engage in a high speed chase here was pretext, and not capable of being rationalized to serve any legitimate governmental interest.   As a result, the initiation and continuation [of] this high speed chase under the circumstances evidenced an intent to harm or at least worsen the plight of Plaintiff's [D]ecedent.

(Doc. No. 41 at 3–4 ¶ 15.)

Having previously alleged that Decedent "was lawfully operating a vehicle" (Doc. No. 41 at 2 ¶ 6), and then that Officer Elezovic "allegedly observed [Decedent's] vehicle 'not utilizing his turn signal 100 feet prior to commencing a turn, and stopping for 4-6 seconds at a stop sign'" before beginning a "high speed chase" of Decedent, who "fled" from Officer Elezovic (id. at ¶¶ 7–8), the above allegations of the Third Amended Complaint fail to plead facts showing an "intent to harm" on the part of Officer Elezovic, as required to plausibly allege a substantive due process violation.   In Lewis, the Supreme Court stated that "conduct deliberately intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."   See Lewis, 523 U.S. at 834 (emphasis added). Here, as alleged by Plaintiff in the Third Amended Complaint, the high-speed chase that led to Decedent's death began when Officer Elezovic allegedly observed Decedent's vehicle in violation of traffic laws, and Plaintiff's Decedent fled from Officer Elezovic rather than stop his vehicle.   Even taken as true, these facts do not reflect a deliberate intent to injure "unjustifiable by any government interest."   See id.   While Plaintiff asserts in a conclusory fashion that the pursuit was "not capable of being rationalized to serve any legitimate governmental interest" and therefore the pursuit "evidenced an intent to harm or at least worsen the plight of Plaintiff's [D]ecedent," that statement parrots the relevant legal standard instead of asserting facts showing an intent to harm on the part of the pursuing police officer, as required by Lewis.

As in the Second Amended Complaint, Plaintiff in the Third Amended Complaint

appears to suggest that Officer Elezovic should not have pursued Plaintiff's Decedent as an initial matter because Plaintiff was "lawfully operating [his] vehicle."   (Doc. No. 41 at 2 ¶ 6.) As previously noted by the Court, this argument is unavailing because "[t]he Supreme Court has held on multiple occasions that the decision to engage in flight and to ignore police warnings to stop causing risk to innocent bystanders results, not from the pursuit by law enforcement, but from the fleeing suspect intentionally placing himself and others in danger by unlawfully engaging in reckless flight."   See Koreny v. Smith, No. 17-cv-00371, 2018 WL 1141513, at *8 (W.D. Pa. Mar. 2, 2018).

As the Court previously held, Plaintiff's allegation that Officer Elezovic's "initiation and continuation of this high speed chase" potentially "in violation of yet to be disclosed policies and procedures, as confirmed by Corporal Pachalski's order to terminate the chase," see (Doc. No. 41 at 4 ¶¶ 15–16), does not change the analysis.   Indeed, in Davis v. Township of Hillside, 190 F.3d 167 (1999), the Third Circuit addressed a similar substantive due process claim alleging that a police officer involved in a vehicular pursuit "willfully violated applicable police department regulations" in connection with the pursuit.   See id. at 170.   In so doing, the Third Circuit noted that Lewis "squarely refutes plaintiff's contention that the officers' violation of police department regulations, which might be probative of recklessness or conscious disregard of plaintiff's safety, suffices to meet the shocks-the-conscience test under the due process clause." See id.   Accordingly, even assuming the truth of Plaintiff's allegation that Officer Elezovic continued the chase in violation of a superior's order (and potentially violated Township policies in doing so), the Third Amended Complaint fails to plausibly allege a substantive due process violation and therefore fails to allege a Section 1983 claim against Officer Elezovic.

Despite Plaintiff's failure to plausibly allege a substantive due process violation against

Officer Elezovic, however, Third Circuit precedent pertaining to police pursuit "requires the district court to review the plaintiff['s] municipal liability claim[] independently of the section 1983 claim[] against [an] individual police officer[], as the [Township's] liability for a substantive due process violation does not depend upon the liability of any police officer."  See Kneipp, 95 F.3d at 1213.   Under the Third Circuit's decision in Fagan v. City of Vineland, 22 F.3d 1283 (3d Cir. 1994), "a municipality can be liable under section 1983 and the Fourteenth Amendment for a failure to train its police officers with respect to high-speed automobile chases, even if no individual officer participating in the chase violated the Constitution."  See id. at 1294; see also Grazier ex rel. White v. City of Philadelphia, 328 F.3d 120, 124 n.5 (3d Cir. 2003) (noting that the Third Circuit "carefully confined Fagan to its facts: a substantive due process claim resulting from a police pursuit").

The relevant allegations of Plaintiff's Third Amended Complaint are as follows:

13. It is believed and therefore averred that the Lower Paxton Township at all relevant times had maintained a policy, custom or practice of deliberate indifference to the hiring, training, supervision, and discipline of its police officers, despite knowing that those police officers would come into contact with citizens such as Plaintiff's decedent.

14. In accordance with this municipal policy of deliberate indifference, police officer Michael Elezovic was improperly hired, trained, supervised, and disciplined, and, if properly hired, trained and supervised, he would not have initiated a high speed chase after Plaintiff's decedent without justification or probable cause, and continue that chase outside of his jurisdiction, likely in violation of policies and procedures yet to be disclosed.

15. It is believed and therefore averred that the "justification" to engage in a high speed chase here was pretext, and not capable of being rationalized to serve any legitimate governmental interest.   As a result, the initiation and continuation [of] this high speed chase under the circumstances evidenced an intent to harm or at least worsen the plight of Plaintiff's decedent.

16. The initiation of this high speed chase was without probable cause, in violation of the constitution, and likely in violation of yet to be disclosed policies and procedures, as confirmed by Corporal Pachalski's order to terminate the

chase.

17. It is believed and therefore averred, that there had been previous incidents of high speed chases initiated by police officers of Lower Paxton Township without probable cause leading to injuries and deaths, and therefore making it a morale certainty that greater supervision and training was necessary.

18. It is believed and therefore averred that if Officer Elezovic had been properly hired, trained and supervised, and if Lower Paxton Township has [sic] proper policies and procedures in place that were enforced, a high speed chase through two jurisdictions without probable cause would not have taken place, and this accident would not have occurred and Plaintiff's decedent would be alive today.

19. The aforesaid Lower Paxton policy, custom or practice of deliberate indifference to the hiring, training, supervision, or discipline of its police officers who would come into contact with citizens was the direct and proximate cause of the death of decedent.

20. It is believed and therefore averred that Lower Paxton Township, at all relevant times, had, or should have had, policies in place to ensure that high speed chases are only initiated in truly emergent circumstances not existing here, and only with sufficient probable cause, confirmed by Corporal Pachalski as not existing here, to prevent foreseeable accidents and injuries to members of the public, like that involving Plaintiff's decedent.

21. If policies restricting the initiation and continuation of high speed chases absent truly emergent circumstances and without probable cause were not in place at the time of this accident, Lower Paxton Township would be effectively condoning the violation of the decedent's constitutional rights of due process of law under the Fourteenth Amendment, and to be free from unreasonable search and seizure, by effectively encouraging their officers to engage in high speed chases for any reason or no reason at all, in violation of the constitution.

22. In accordance with a municipal policy or indifference, Lower Paxton Township failed to implement and/or enforce appropriate policies and procedures to limit high speed chases to only emergent circumstances, which, if properly implemented and/or enforced, would have prevented this accident from having occurred.

23. The aforementioned policy, custom or practice of Lower Paxton Township of deliberate indifference to the danger associated with  their officers engaging in high speed chases without probable cause, and their failure to implement and/or enforce appropriate policies and procedures regulating high speed chases, "shocks the conscious" in this day and age, and was the direct and proximate cause of the injuries and death of the decedent.

(Doc. No. 41 at 4–5, ¶¶ 13–23.)

Even accepting these sweeping allegations in the Third Amended Complaint as true, and drawing all inferences from them in Plaintiff's favor, Plaintiff's "allegations related to the claimed custom or policy" remain "too vague and conclusory to show evidence of an actionable custom or policy on the part of the [Township]."   See Garcia v. Phila. Dist. Att'y's Off., No. 23-01224, 2023 WL 3750604, at *2 (3d Cir. June 1, 2023) (unpublished), petition for cert. pending, No. 23-6327 (filed Aug. 4, 2023) (citing Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) and then citing McTernan, 564 F.3d at 659); see also id. at 658 (noting that to plead a Monell claim, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was")).   The Third Amended Complaint fails to allege any facts related to the existence of a municipal policy or custom or how the alleged policy or custom allowed the alleged constitutional violation to occur, or to identify a policymaker or decisionmaker responsible for a policy or custom.   Not only do Plaintiff's allegations consist of conclusory assertions that parrot the relevant legal standard rather than pleading specific facts, but they are internally inconsistent—on the one hand asserting that Officer Elezovic initiated the pursuit "likely in violation of yet to be disclosed policies and procedures," (Doc. No. 41 ¶ 16), while also alleging that the Township "failed to implement and/or enforce appropriate policies and procedures to limit high speed chases" and that failure caused the fatal accident (id. ¶ 22).

Furthermore, with regard to a failure to train Monell claim, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."   See Connick v. Thompson, 563 U.S. 51, 62 (2011).   Given Plaintiff's reliance on this single incident to support his claim, and as previously stated by the Court, Plaintiff must allege that policymakers "knew to a moral

certainty" that the alleged deprivation would occur and that the need for further training was accordingly "plainly obvious."   See City of Canton, 489 U.S. at 390 n.10.   Plaintiff attempts to bolster his generalized allegations with "factual" representations regarding other incidents that are completely without support in the Third Amended Complaint.   For example, while the Third Amended Complaint states in a conclusory manner that "[i]t is believed and therefore averred that there had been previous incidents of high speed chases initiated by police officers of Lower Paxton Township without probable cause leading to injuries and deaths, and therefore making it a morale [sic] certainty that greater supervision and training was necessary," see (Doc. No. 41 at 4 ¶ 17), Plaintiff's belief in this regard does not equate to an assertion of facts showing a plausible failure to train claim.   Instead, Plaintiff's allegations in the Third Amended Complaint are consistent with an assertion that "the employees 'could have been better trained or that additional training was available that would have reduced the overall risk of continued injury,'" which is insufficient to plausibly allege a failure to train Monell claim.   See Thomas, 749 F.2d at 226 (citation omitted).   In addition, Plaintiff has not identified a "failure to provide specific training that has a causal nexus with [his claim]" and has not pleaded facts indicating "that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivation[] occurred."   See Reitz, 125 F.3d at 145 (citing Colburn, 946 F.2d at 1030); see also, e.g., Pahler v. City of Wilkes-Barre, 207 F. Supp. 2d 341, 353 (M.D. Pa. 2001) (dismissing failure to train claim where the plaintiff pleaded no facts to support the contention that his injuries were caused by a failure to train, failed to identify the specific training the city should have offered, and failed to plausibly allege that training was not provided).   Claims of failures to supervise, discipline, and monitor cannot be pleaded in a conclusory manner.   See, e.g., Moresi v. City of Philadelphia, No. 15-cv-00038, 2015 WL

4111724, at *4 (E.D. Pa. July 8, 2015) (dismissing <u>Monell</u> claims asserting "failure to investigate, supervise, or discipline [] police officers" where, "[a]part from the single incidence of alleged police misconduct against [the plaintiff], [the plaintiff] plead[ed] no other facts necessary to establish a municipal liability claim").

Accordingly, because Plaintiff's Third Amended Complaint fails to plead facts plausibly alleging a substantive due process violation caused by the Township's policy, custom, or failure to train, as required to state a claim for Section 1983 municipal liability under <u>Monell</u>, the Court will grant Defendant's motion to dismiss Plaintiff's Section 1983 municipal liability claim (Count I).   Defendant requests that the Court dismiss Plaintiff's Section 1983 claim against it with prejudice and without further leave to amend.   (Doc. No. 46 at 17.)   Plaintiff, on the other hand, asks that any dismissal of this claim be without prejudice to his ability to file a fourth amended complaint after Defendant is "compelled to produce all relevant policies, procedures, customs and practices as it relates to the facts of this case."   (Doc. No. 48 at 7.)   Plaintiff cites no authority in support of his request for additional discovery and another opportunity to plead his claims.   The Court notes that Plaintiff had the opportunity to file two amended versions of his complaint after receiving some discovery from the Township and a third amended version of his complaint after receiving guidance from the Court as to the pleading requirements of a Section 1983 municipal liability claim.   As previously stated by the Court, Plaintiff must first allege a plausible claim for relief before he is entitled to discovery.   <u>See</u> <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 789 (3d Cir. 2016) (noting that, to survive a motion to dismiss (and proceed to discovery), a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims"); <u>Tieman v. City of Newburgh</u>, No. 13-cv-04178, 2015 WL 1379652, at *21–*23 (S.D.N.Y. Mar. 26, 2015) (stating that plaintiff

asserting Section 1983 failure to train claim must meet <u>Twombly</u> and <u>Iqbal</u> pleading standard despite limited information available to plaintiff pre-discovery).   Accordingly, at this point the Court concludes that granting Plaintiff further leave to amend would be futile, and therefore the Court will dismiss Plaintiff's Section 1983 claim against the Township (Count I) with prejudice.

<div align="center">2.      <b>Plaintiff's Negligence/Wrongful Death/Survival Claims</b></div>

In light of the Court's resolution of Defendant's motion to dismiss Plaintiff's Section 1983 claim (Count I), there is currently no viable federal claim before the Court supporting the exercise of supplemental jurisdiction over Plaintiff's state law claims (Counts II, III, and IV). <u>See</u> <u>Plasko v. City of Pottsville</u>, 852 F. Supp. 1258, 1267 (E.D. Pa. 1994) (first citing <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966); and then citing <u>Weaver v. Marine Bank</u>, 683 F.2d 744, 746 (3d Cir. 1982)) ("[c]ourts should ordinarily decline to exercise supplemental jurisdiction over state law claims when the federal claims are dismissed"). Accordingly, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims and will remand those claims to the Dauphin County Court of Common Pleas.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court will deny Plaintiff's motion for leave to file interlocutory appeal and grant in part Defendant's motion to dismiss, insofar as Plaintiff's Section 1983 claim against Defendant will be dismissed with prejudice.   The Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims and remand those claims to the Dauphin County Court of Common Pleas.   An appropriate Order follows.

<div style="margin-left:40%">
 s/ Yvette Kane<br>
Yvette Kane, District Judge<br>
United States District Court<br>
Middle District of Pennsylvania
</div>